**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRINA CHERNYAKHOVSKAYA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RESURGENT CAPITAL SERVICES L.P., AND LVNV FUNDING LLC,<br><br>Defendants. | Civil Action No. 2:16-cv-1235 (JLL)<br><br>**OPINION** |

**LINARES**, Chief Judge.

This matter comes before the Court by way of Defendants', Resurgent Capital Services L.P. ("Resurgent") and LVNV Funding LLC ("LVNV")(collectively "Defendants"), Motion for Judgment on the pleadings and Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(1), Plaintiff Irina Chernyakhovskaya ("Plaintiff" or "Chernyakhovskaya")'s putative class action Complaint (ECF No. 21, "Am. Compl.") alleging Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). In accordance with Federal Rule of Civil Procedure 78, the Court has considered the submissions of the parties and decides this matter without oral argument. For the reasons set forth below, the Court denies Defendants' motion as to Resurgent and grants Defendants motion as to LVNV.

## BACKGROUND

### A. Factual Background

On July 1, 2000, Plaintiff opened a Checking Plus account with Citibank (South Dakota), N.A. ("Citibank"). (Am. Compl. ¶ 14). At some time prior to 2005, Plaintiff's payment obligations on the account became past due and the principal amount incurred on the debt totaled $4,959.61 (the "Debt"). (Id.¶¶ 20, 22). During 2005, Plaintiff contends that Citibank charged-off the Debt in the amount of $4,959.61. (Id. ¶¶ 21, 22).

On or around December 30, 2011, LVNV ultimately acquired the Debt, which was sold more than once prior and, by this time, delinquent and in default. (Id. ¶¶ 23, 24). Plaintiff alleges that thereafter LVNV referred the Debt to Resurgent for collection. (Id. ¶ 25).

On or around March 4, 2015, Defendants sent Plaintiff a collection letter ("Collection Letter") with a balance due in the amount of $5,815.07 along with an Account Summary Report ("Account Summary Report") prepared by Resurgent. (Id. ¶ 26, Ex. A.). Plaintiff alleges that the that the Account Summary Report indicates the date of last payment as September 15, 2004 and that the account was charged off on March 30, 2005. (Id. ¶ 27). Furthermore, Plaintiff asserts that the Account Summary Report sets forth that the balance due included interest in the amount of $855.46. (Id. ¶ 28; Ex. A). Plaintiff alleges that the Collection Letter and Account Summary Report unlawfully sought to collect an additional $855.46 in the form of an unreasonable collection fee, costs or interest in violation of multiple sections of the FDCPA. (Id. ¶ 33).

### B. Procedural History

On March 3, 2016, Plaintiff commenced a putative class action against Defendants alleging several violations of the FDCPA. (ECF No. 1, "Compl."). Thereafter, in light of the Supreme Court decision *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) and the United States District

Court for the District of New Jersey's decision in *Veras v. LVNV Funding, LLC*, No. 13-1745 2014 U.S. Dist. LEXIS 34176 (D.N.J. Mar. 17, 2014), Plaintiff moved for leave on September 7, 2016 to file an amended complaint in order to include allegations consistent with the Supreme Court decision and the United States District Court decision. (ECF No. 16)[1]. Magistrate Judge Joseph A. Dickson, U.S.M.J., granted Plaintiff's motion for leave to amend her Complaint pursuant to Federal Rule of Civil Procedure 15(a). (ECF No. 20)[2].

Thereafter, on November 23, 2016, Plaintiff amended her putative class action Complaint to include allegations consistent with *Spokeo* and *Veras*. (ECF No. 21). Defendants filed an Answer (ECF No. 22) to Plaintiff's Amended Complaint on December 14, 2016. Thereafter, on May 8, 2017, Defendants filed the instant Motion to Dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and Motion for Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 28-5, "Defs.' Br."). Plaintiff filed its opposition (ECF No. 35, "Pl.'s Opp'n") on June 5, 2017. On June 12, 2017, Defendants replied to Plaintiff's opposition (ECF No. 36, "Defs.' Reply Br."). In consideration of the United States

---

[1] To summarize Plaintiff's argument, Judge Dickson set forth that:

> Defendants argued, among other things, that Plaintiff's claims failed because Plaintiff's credit agreement with Citibank (the "Agreement") authorized Citibank and, in turn, LVNV to collect interest on Plaintiff's account balance (ECF No. 12-6, 16-23) and that, in accordance with the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff lacked standing to pursue her claims. (ECF No. 12-6, 11-16). While Defendants' motion to dismiss was pending, Plaintiff filed a motion for leave to amend her pleading to add allegations supporting her existing claims for violations of FDCPA in light of *Spokeo* and the United States District Court for the District of New Jersey's decision in *Veras v. LVNV Funding, LLC*, No. 13-1745 2014 U.S. Dist. LEXIS 34176, 2014 WL 1050512 (D.N.J. Mar. 17, 2014). (ECF No. 20, p. 2).

[2] Judge Dickson's November 21, 2016 Letter Order asserted that Plaintiff has standing to pursue the claims alleged in her proposed Amendment. (ECF No. 20, p. 6). Judge Dickson also "note[d] that at least one real risk of harm – the risk of paying money to an entity that was not entitled to collect it – is evident on the face of such allegations. That risk of harm satisfies the 'concreteness' requirement highlighted in *Spokeo*, and Plaintiff has therefore sufficiently alleged the sort of 'injury in fact' sufficient to confer Article III standing." (Id., p. 9).

3

Supreme Court decision *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 810 (2017) and in support of their motion, Defendants filed a Notice of Supplemental Authority (ECF No. 37) on June 15, 2017.

### C. **The Amended Complaint**

The one count Amended Complaint alleges that Defendants violated the following provisions of the FDCPA:

- 15 U.S.C. § 1692e, by using a false, deceptive or misleading representation of means in connection with the collection of any debt;

- 15 U.S.C. § 1692e(2)(A), by falsely representing the character, amount, or legal status of any debt;

- 15 U.S.C. § 1692e(2)(B), by falsely representing any services rendered or compensation which may lawfully be received by a debt collector for the collection of a debt;

- 15 U.S.C. § 1692e(10), by using false representation or deceptive means to collect or attempt to collect a debt from Plaintiff;

- 15 U.S.C. § 1692f, by using unfair or unconscionable means to collect or attempt to collect any debt; and

- 15 U.S.C. § 1692(f)(1), by collecting or attempting to collect any amount not expressly authorized by the agreement creating the debt or permitted by law.

(Am. Compl. ¶ 59 (A)-(F)). Plaintiff alleges that she suffered "injury in fact by being subjected to unfair and abusive practices of Defendant" and "actual harm by being the target of Defendant's misleading debt collection communications." (Id.¶¶ 40, 41). Plaintiff additionally argues that Defendants violated her right "not to be the target of misleading debt collection communications" and "to a trustful and fair debt collection process." (Id.¶¶ 42, 43).

In further support of her standing argument, Plaintiff avers that the receipt of the Collection Letter, which Plaintiff alleges wrongly assessed the interest due on the Debt, constitutes a concrete injury and that said failure to provide accurate information impeded Plaintiff's ability to

make a well-reasoned decision. (Id. ¶¶ 50, 51). According to Plaintiff, Defendants alleged actions violated the FDCPA by frustrating Plaintiff's ability to intelligently respond to the purported Debt. (Id. ¶ 54). More specifically, Plaintiff asserts "Defendants failure to provide accurate information injured Plaintiff in that it impacted her ability to decide on how to proceed with respect to the matter – will she hire an attorney, represent herself, payoff the debt, engage in a payment plan, [or] file for bankruptcy." (Id. ¶ 54).

Plaintiff further claims that the incorrect debt information, provided by Defendants, may negatively impact her credit score, may hinder her from establishing credit and may also subject her to higher borrowing costs in the future. (Id. ¶ 53). Plaintiff asserts that within the last year, Defendants sent collection letters to various New Jersey consumers that included a demand for an amount that was greater than the amount actually due at the time the collection letters were sent and that included a demand for an amount that incorporated a collection fee, interest or other fee that Defendants were not entitled. (Id. ¶ 55).

Seeking actual and statutory damages, attorney's fees, and costs for Defendants' purported FDCPA violations, Plaintiff seeks to join a class of all New Jersey consumers and their successors in interest who have received debt collection letters and/or notices from the Defendants which are in violation of the FDCPA as described in the Amended Complaint. (Id. ¶ 11). Plaintiff maintains that the Class consists of all New Jersey consumers who were sent letters and/or notices from Defendants concerning a debt originally owed to Citibank and now owned by LVNV in which the Collection Letter identified a balance which impermissibly included interests, fees, penalties and other charges. (Id. ¶ 12). In the alternative, Plaintiff contends the class consists of all New Jersey consumers who were sent letters and/or notices from Defendants which contained violations of the FDCPA . (Id.).

## LEGAL STANDARDS

### A. Motion for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. Standing is a jurisdictional matter thus "a motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1)." *See Ballentine v. United States*, 486 F. 3d 806, 810 48 V.I. 1059 (3d Cir. 2007); *see also N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 n.3 (3d Cir. 2015)("Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter."). A 12(b)(1) motion to dismiss may be treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, the movant challenges the legal sufficiency of the claim and the court considers only the documents attached to the "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.* In regards to a factual attack, the attack challenges the actual alleged jurisdictional facts. Thus, when considering a factual attack, the court may consider evidence outside of the pleadings. *Id.* Once a 12(b)(1) challenge is raised the burden then shifts and the plaintiff must demonstrate the existence of subject-matter jurisdiction. *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 2000).

On a motion to dismiss for lack of standing, the plaintiff "bears the burden of establishing the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "For the purpose of determining standing, [the court] must

accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)(citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

### B. Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A court must view the facts in the pleadings and inferences drawn therefrom in the light most favorable to the nonmoving party, and the motion should not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." *Perez v. Griffin*, 304 Fed. App'x 72, 74 (3d Cir. 2008)(citing *Mele v. FRB*, F.3d 251, 253 (3d Cir. 2004)).

When a moving party asserts that the complaint fails to state a claim upon which relief may be granted, a court applies the same standards as those applied in a Rule 12(b)(6) motion to review of a motion for judgment on the pleadings filed pursuant to Rule 12(c). *See Turbe v. Government of Virgin Islands*, 938 F. 2d 427, 428 (3d Cir. 1991). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed 2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (citing *Twombly*, 550 U.S. at 557).

## DISCUSSION

Defendants advance three arguments in support of their motion for judgment on the pleadings and motion to dismiss for lack of subject-matter jurisdiction. First, Defendants assert that Plaintiff fails to allege any concrete injury in fact and thus lacks standing under Article III. (Defs.' Br. 10). Second, Defendants contend that Plaintiff fails to plead a violation of the FDCPA because the Checking Plus Account Agreement and Disclosure between Citibank and Plaintiff (the "Agreement"), attached to Defendant's moving brief, authorized Defendants to charge interest on the Debt. (Id. 23, ECF No. 28-3). Lastly, Defendants argue that the Amended Complaint fails to sufficiently state a claim that the Collection Letter unreasonably attempted to collect interest because the Amended Complaint does not dispute that the Agreement giving rise to the Debt allows for the applicable interest charges. (Id. 30).

Relying on *Spokeo* and Judge Dickson's Letter Order, Plaintiff opposes Defendants motion and argues that she has standing under Article III to proceed with this action. (Pl.'s Opp'n 5). Secondly, Plaintiff contends that by falsely representing the amount of interest due on the Debt, Plaintiff's allegations against Defendants under both Sections 1692e and 1692f of the FDCPA are sufficient to survive a motion to dismiss. (Id. 12). For the reasons discussed below, the Court denies Defendants' motion as to Resurgent and grants Defendants' motion as to LVNV.

### A. Standing

Defendants challenge Plaintiff's standing claiming that Plaintiff has failed to allege any concrete harm sufficient to establish an injury-in-fact that is redressable by this Court and that the Amended Complaint's added claims that Defendants violated 15 U.S.C. § 1692e,

1692e(2)(A), 1692e(2)(B), 1692e(10) and 15 U.S.C. § 1692f and 1692f(1) due to the fact that they are not licensed under the New Jersey Consumer Finance Licensing Act ("NJCFLA")[3] and therefore are not permitted to purchase, manage and collect interest on the Plaintiff's Debt. (Am. Compl. ¶¶ 30-32, 36-38). Defendants argue that the lack of a license fails to confer standing upon the Plaintiff as the Agreement governs Defendants rights to collect the Debt as opposed to a license and that the lack of a license does not affect Plaintiff's ability to make a well-reasoned decision. (Id. 12). Defendants argue that the lack of a license is a procedural violation that does not constitute a concrete and particularized injury in fact that would confer standing and also that the amount of character of the Debt does not depend on a debt collector license. (Defs.' Br. 16, 18).

In opposition, Plaintiff first contends that a concrete injury in fact has been sufficiently alleged within the meaning of *Spokeo* and therefore she has standing to bring her claims under Article III of the United States Constitution. (Pl.'s Opp'n 4). Plaintiff refers to Judge Dickson's November 21, 2016 Order granting Plaintiff's motion for leave to amend her Complaint which asserted that Plaintiff sufficiently alleged an injury-in-fact sufficient to confer Article III standing.[4] In advancement of her argument, Plaintiff claims that the FDCPA entitles her to receive accurate information regarding the actual amount that she was obligated to pay, in addition to whether or not Defendant LVNV was New Jersey licensed consumer lender. (Id. 8).

Article III of the United States Constitution serves "to identify those disputes which are appropriately resolved through the judicial process" thereby limiting the jurisdiction of federal

---

[3] The New Jersey Licensed Lender Act ("NJLLA") was amended and renamed the New Jersey Consumer Finance Licensing Act ("NJCFLA") in 2009. *See Veras*, No. 13-1745 at *3. In their briefs the parties refer to the NJLLA rather than the NJCFLA, notwithstanding, the Court will refer to the proper name of the statute throughout its Opinion and notes that for purposes of resolving this motion the distinction is immaterial.

[4] (*See* ECF No. 20)("The Supreme Court's decision in *Spokeo* did not alter the requirements for establishing Article III standing." *See, e.g., Bock v. Pressler & Pressler, LLP*, No. 15-1056, 2016 U.S. App LEXIS 13681, *3 (3d Cir. July 27, 2016)).

courts to cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also Twp. of Lyndhurst v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011)(quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 151, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)("[T]he question of standing in the federal courts is to be considered within the framework of Article III [of the Constitution,] which restricts judicial power to 'cases' or 'controversies.'")). "[A]n essential and unchanging part of the case-or-controversy requirement of Article III," the doctrine of standing governs the justiciability of matters presented to the court by limiting "the category of litigants empowered to maintain a lawsuit in the federal court to seek redress for a legal wrong." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 7510, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984); *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)(citing *Valley Forge v. Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982); *Warth v. Seldin*, 422 U.S. 490, 498-499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

Moreover, "[t]he irreducible constitutional minimum of standing" requires the following three elements:

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Lujan*, 504 U.S. at 560-561, 112 S. Ct. 2130, 2136 (1992)(internal quotations and citations omitted). As the party invoking federal jurisdiction, the plaintiff bears the burden to establish the three elements and if the plaintiff does not fulfill its burden, the party does not possess Article III

standing and the District Court "lack[s] subject-matter jurisdiction to address the merits of plaintiff[]['s] case." *Spokeo*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635; *Storino*, 322 F. 3d at 296.

In its recent decision, *Spokeo, Inc. v. Robins*, the Supreme Court discussed the particularization and concreteness components integral to a plaintiff's showing of the existence of an injury-in-fact. *See* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). The Supreme Court in *Spokeo* reiterated that it has "made clear time and time again that an injury in fact must be concrete *and* particularized" and that though injury in fact requires particularity, this prerequisite does not suffice on its own; a showing that the injury is concrete is also necessary. 136 S. Ct. at 1548 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. ___, ___, 134 S. Ct. 2334, 189 L. Ed. 2d 246, 255 (2014); *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 173 L. Ed. 2d (2009); *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 274, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008); *Massachusetts v. EPA*, 549 U.S. 497, 517, 127 S. Ct. 1438, 167 L. Ed. 2d 248 (2007)).

In describing the nature of concreteness, the Supreme Court opined that concrete is not "necessarily synonymous with 'tangible'" and that "intangible injuries can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1549(citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 129 S. Ct 1125, 172 L. Ed 2d 853 (2009)(free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993)(free exercise)). The Supreme Court asserted that:

> This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness. For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. Just at the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one congress has identified.

*Spokeo*, 136 S. Ct. at 1549-50 (internal citations omitted).

Here, the Court finds that Plaintiff's injury falls within the meaning of an injury as defined in *Spokeo*. Thus, the Court determines that Defendants' argument is without merit and finds that Plaintiff has Article III standing to bring this claim. Though a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III", the possible risk of harm associated with receiving misinformation as a debt owed constitutes an injury in fact sufficient to confer Article III standing. *Spokeo*, 136 S. Ct. 1540, 1549 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635. In accordance with *Spokeo* and Judge Dickson's November 21, 2016 Letter Order, Plaintiff has adequately plead the injury in fact requirement sufficient to confer standing to bring her cause of action.

### B. Claim under the FDCPA

In support of their motion, Defendants argue that Plaintiff fails to plead a violation of the FDCPA § 1692f because the Agreement authorizes Defendants to charge interest and further that "charging-off", as referred to in the Amended Complaint and Account Summary Report does not constitute a cancellation of the Debt or forgiveness of the Plaintiff's obligation to pay interest on the Debt. (Defs.' Br. 23-24). Defendants set forth that a "charge-off", as referred to in the Amended Complaint, has no effect on the validity or enforceability of the Debt since, as Defendants maintain, to "charge-off" means to declare that a debt is unlikely to be collected and that a "charge-off" does not affect the validity or enforceability of the debt, but rather a "charge-off" indicates that Citibank ceased its own efforts to bring the account current, closed the account and referred it for collection. (Id. 25).

Plaintiff alleges in her opposition that Defendants were not entitled to demand post charge-off interest after the Debt had been sold to LVNV inasmuch as that the purported Agreement

does not include language which authorizes a later purchaser of the Debt to collect the interest as indicated in the Collection Letter. (Pl.'s Opp'n 16). For the reasons that follow, the Court agrees with Plaintiff.

The FDCPA functions "to protect consumers from a host of unfair, harassing, and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors" and "to eliminate abusive debt collection practices which contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *F.T.C. v. Check Investors, Inc.*, 502 F. 3d 159, 165 (3d Cir. 2007); *Wilson v. Quadramed*, 225 F. 3d 350, 353 (3d Cir. 2000).

In order to succeed on an FDCPA claim, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)(citing *Piper v. Portnoff Law Assocs., Ltd.*, 396 F. 3d 227, 232 (3d Cir. 2005). "A consumer includes any natural person obligated or allegedly obligated to pay any debt. A communication constitutes the conveying of information regarding a debt directly or indirectly to any person through any medium. The focus of § 1692f is on the conduct of the debt collector." *Allen v. LaSalle Bank*, 629 F. 3d 364, 368 (3d Cir. 2011)(citing 15 U.S.C. §§ 1692(a)(3), 1692a(2)). In prohibiting the collection of any unauthorized debt, the application of Section 1692f of the FDCPA is expansive. Third Circuit precedent sets forth that the collection as defined in §1692f(1) "includes attempted collection as well as actual collection." *Id.* at 369 n. 4. Furthermore, "a debt collector may not use any false, deceptive, or misleading representation or means in the collection of any debt." 15 U.S.C. § 1692e.

"[L]ender-debtor communications potentially giving rise to claims under the FDCPA...should be analyzed from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F. 3d 218, 221(3d Cir. 2008)(quoting *Brown v. Card Serv. Ctr.*, 464 F. 3d 450, 454 (3d Cir. 2006)). Furthermore, the Least Sophisticated Debtor Standard "is lower than the standard of a reasonable debtor" and "is not a particularly high bar." *Id.* (quoting *Wilson*, 225 F. 3d at 354; *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015). In applying the standard, courts focus on "whether a debt collector's statement in a communication to a debtor would deceive or mislead the least sophisticated debtor." *Jensen*, 791 F.3d at 420. "[A] false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be *material* when viewed through the least sophisticated debtor's eyes." *Id.* at 421.

The materiality element of the Least Sophisticated Debtor Standard does not hinge on what an ordinary individual might reasonably interpret from a debtor's communication, but rather, a material statement is one that has a natural tendency to influence or has the capability of influencing the decision of the decisionmaking body to which it was addressed. *Id.* Here, the relevant decisionmaking body is the least sophisticated debtor. *Id.* (citing *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (3d Cir. 2015)("To violate the statute, a representation must be material, which is to say, it must be 'important in the sense that [it] could objectively affect the least sophisticated consumer's decisionmaking.'")

As the drafter of the Account Summary Report, Resurgent is responsible for its content and for what the least sophisticated debtor would have understood from it. *See McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014). The Court finds that under Third Circuit precedent, the communication to Plaintiff from Defendant Resurgent may provide a basis

for relief as the information provided by Defendant Resurgent, when viewed from the prospective of the least sophisticated debtor has the potential to affect said consumer's decisionmaking in that a demand for additional interest of which Defendant Resurgent allegedly did not have authorization to demand would most likely mislead the least sophisticated consumer.

Moreover, the Agreement that Defendants rely upon as the basis of their argument is silent as to the impact of the sale of the Debt on both the debtor and a subsequent purchaser and also silent as to the meaning of "charging-off." (*See* ECF No. 28-3). The Account Summary Report indicates that the original creditor is Citibank and that after being acquired by North Star Capital Acquisition LLC, LVNV acquired the account on or around December 30, 2011, in the amount of $4,959.61. (Id.). As indicated in the Collection Letter and Account Summary Report, the amount requested by Defendants is $5,815.07, however, as previously mentioned, the amount sought by Defendants includes additional interest for the period after December 30, 2011. (Id.). Because of this, the Court finds that the Account Summary Report and Collection Letter, both dated March 4, 2015, would likely mislead the least sophisticated debtor by providing that Plaintiff is obligated to pay additional interest on her debt, which at this point in the litigation, it is not clear whether Resurgent is entitled to said amount.

Additionally, in furtherance of their argument, Defendants cite to *Cooper v. Pressler & Pressler, LLP*, which defines "charging-off" as ceasing efforts to bring the account current, closing the account or referring the debt to collection. *See* 912 F. Supp. 2d 178, 189 n.3 (D.N.J. 2012). In *Cooper*, the Court first emphasized that the plaintiff in the action did not provide the definition as to what qualifies as "charging-off" and further noted that once a consumer fails to pay a debt after 180 days the credit card issuer charges off the account meaning that the "[c]redit

card issuers seek[s] to recover delinquent debt through a combination of methods, including by using their own in-house collection personnel, third-party collection agencies, debt-collecting attorneys, or by selling the defaulted debt to a debt buyer." *Id.* (citing *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 835 (D.N.J. 2011). However, this does not necessarily indicate that "charging-off" the Debt authorized Resurgent to collect an additional interest on Plaintiff's Debt as the Agreement between Citibank and Plaintiff also does not establish that any subsequent purchasers of the Debt may collect an interest in the amount as indicated in the Account Summary Report.

In light of the foregoing, at this juncture in the parties' litigation, the Court denies Defendant Resurgent's motion as the Court finds that Plaintiff has established that the FDCPA applies to Resurgent and therefore Plaintiff has stated a claim sufficient to survive Defendants' motion as to Resurgent. As discussed below, however, in consideration of *Henson*, the Court dismisses the action as to LVNV. [5]

### C. Henson v. Santander

In light of the recent Supreme Court decision, *Henson v. Santander*, the Court dismisses the action as to LVNV because the FDCPA does not apply; thus, LVNV cannot be held liable under the FDCPA. In *Henson*, the Supreme Court "face[d] a question about who exactly qualifies as a debt collector subject to the Act's rigors." 137 S. Ct. 1718, 1720 (2017). More specifically, the Supreme Court posed the question "what if you purchase a debt and then try to collect it for yourself – does that make you a 'debt collector' too? That's the nub of the dispute" before the Court in *Henson*. *Id.*

The facts in *Henson* are as follows: CitiFinancial Auto loaned money to petitioners seeking

---

[5] Since LVNV does not qualify as a debt collector under the FDCPA, the Court need not engage in an analysis as to whether or not the lack of a debt collector's license exposes LVNV to liability under the FDCPA.

to buy cars, petitioners then defaulted on those loans, Santander subsequently purchased the defaulted loans from CitiFinancial, and Santander sought to collect in a manner petitioners believed to be troublesome under the FDCPA. *Id.* at 1721-22. Both parties agreed that in deciding whether Santander's conduct falls within the meaning of the Act, it is necessary to look to the statutory language defining the term "'debt collector' to embrace anyone who 'regularly collects or attempts to collect…debts owed or due…another'." *Id.* at 1721-22 (citing 15 U.S.C. § 1692a(6)).

"All that remain[ed] in dispute is how to classify individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account. Does the Act treat the debt purchaser in that scenario more like the repo man or the loan originator?" The Supreme Court held that a company may collect debts that it purchased for its own account without triggering the statutory definition of a debt collector as defined by the FDCPA. The FDCPA's definition of debt collector includes those who regularly seek to collect debts "owed … another" and the statute's plain language focuses on third party collection agents regularly collecting for a debt owner, not a debt owner seeking to collect debts for itself. *See* 137 S. Ct. 1718 (2017).

The holding in *Henson* overturned in part *FTC v. Check Investors, Inc.*, 502 F. 3d 159 (3d Cir. 2007), which held that the FDCPA applied to entities who were in the practice of purchasing debts and then seeking to collect said debts. *See Henson*, 137 S. Ct. at 1721. Check Investors, Defendant in the action, did not dispute the tactics used to collect the debts, but instead argued that the FDCPA did not apply because Check Investors were seeking to collect debts that were purchased from the original payees. *FTC*, 502 F. 3d at 165-66. The District Court held that Check Investors and Hutchins are 'debt collectors' as defined by the FDCPA because Check

Investors obtained the 'debts,' i.e., the NSF checks, after they were in default." *Id.* at 172-73. The Third Circuit Court of Appeals affirmed the District Court's holding asserting that "not only [does the Court] conclude that Appellants are 'debt collectors' rather than 'creditors,' [the Court] believe[s] that their course of conduct exemplifies why Congress enacted the FDCPA and the wisdom of doing so." *Id.* at 174.

*Henson* resolved a circuit split and overruled in part *FTC v. Check Investors, Inc.*, 502 F. 3d 159 (3d Cir. 2007) and therefore Defendant LVNV does not fall within the meaning of a debt collector as defined by the Supreme Court in *Henson*. Plaintiff alleges in the Amended Complaint, Defendants are each a "Debt Collector" as the term is defined by 15 U.S.C. § 1692(a)(6). (Am. Compl. ¶ 10). LVNV purchased the account while the Debt was already delinquent and in default and then referred the debt obligation for collection to Defendant Resurgent. (Id. ¶¶ 23-25). As a subsequent purchaser of the Debt, LVNV does not fall within the meaning of a debt collector as set forth in the FDCPA. Defendant Resurgent, as the third party retained to collect the Debt and having prepared the Account Summary Report, indicating that the date of last payment was September 15, 2004 and that the balance due included interest in the amount of $855.46, Resurgent falls within the meaning of a debt collector under the FDCPA. (Id. ¶¶ 26-28).

As highlighted above, to prevail on an FDCPA claim, a plaintiff must demonstrate that, among other things, the defendant is a debt collector. *See Douglass*, 765 F.3d at 303; *see also Cooper*, 912 F. Supp. 2d at 184 ("The law is clear that FDCPA only applies to 'debt collectors' as the term is defined by the Act."). Per *Henson*, an entity that purchases a debt for its own account does not constitute a debt collector under the FDCPA and because the Amended Complaint includes one count that hinges on the assertion that the Defendants are debt collectors

within the meaning of the FDCPA and LVNV does not fall within the meaning of debt collector as set forth by the Supreme Court in *Henson*, the Court dismisses Plaintiff's action against Defendant LVNV. To the extent Plaintiff may cure any deficiencies as to the allegations against LVNV, the Court will allow Plaintiff to file a second Amended Complaint.

## CONCLUSION

In light of the foregoing, the Court denies Defendants' motion as to Defendant Resurgent and grants Defendants' motion as to Defendant LVNV. To the extent Plaintiff may cure any deficiencies, the Court will allow Plaintiff to file a second amended complaint. An appropriate Order accompanies this Opinion.

DATED: August _____, 2017

_____
JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT